ORAL ARGUMENT NOT YET SCHEDULED

Appeal No. 14-3036

_____

THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT


UNITED STATES OF AMERICA,

*Appellee,*

v.

DERRICK BYAS,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA
_____

BRIEF OF APPELLANT
_____


Jospeh R. Conte
400 7th Street, N.W.
Suite 206
Washington, D.C. 20004
(202) 638-4100

*Counsel for Appellant*

Charles J. Soschin
400 7th Street, N.W.
Suite 206
Washington, D.C. 20004
(703) 981-3629

*Counsel for Appellant*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellant states as follows:

### a.    Parties and Amici

The parties below and in this court are the defendant-appellant, Derrick Byas, and the plaintiff-appellee, the United States of America. There are no intervenors or _amici_, either in the district court or this court.

### b.    Rulings Under Review

In this appeal Derrick Byas challenges the sentence imposed by the District Court, the Honorable Amy B. Jackson. The transcripts of the hearings are reproduced in the Appendix filed with this brief.

### c.    Related Cases

This case has not previously been before this court.  There are no related cases of which appellant is aware.


_____/s/_____        _____/s/_____

Jospeh R. Conte                    Charles J. Soschin
400 7th Street, N.W.               400 7th Street, N.W.
Suite 206                          Suite 206
Washington, D.C. 20004             Washington, D.C. 20004
(202) 638-4100                     (703) 981-3629

_Counsel for Appellant_            _Counsel for Appellant_

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.............................................................................ii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES..............................................................1

STATUTES AND REGULATIONS .........................................................1

STATEMENT OF THE CASE ................................................................2

SUMMARY OF ARGUMENT ................................................................5

ARGUMENT ........................................................................................6

I.      THE DISTRICT COURT ERRED IN SENTENCING BYAS
        WHEN IT INCLUDED MILLOFF'S PRESCRIPTIONS AS
        RELEVANT CONDUCT AND SENTENCED BYAS TO A
        SENTENCE GREATER THAN THE CODEFENDANTS...........6

        a. Standard of Review…………………………..…….………………6

        b. The District Court Erred by Including the Milloff Prescription
           as Reasonably Foreseeable Relevant Conduct…………………7

        c. The District Court Erred When it Imposed a Greater Sentence
           on Byas than the Codefendants…………………………………9

CONCLUSION ...................................................................................12

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES:

*Gall v. United States*,
   552 U.S. 38 (2007) .............................................................. 6

*Pinkerton v. United States*,
   328 U.S. 640 (1946) ........................................................... 7

*Rita v. United States*,
   551 U.S. 338 (2007) ........................................................... 6

*\*United States v. Anderson*,
   39 F.3d 331 (D.C. Cir. 1995) ............................................ 8

*United States v. Booker*,
   543 U.S. 220 (2005) ........................................................... 6

*United States v. Day*,
   524 F.3d 1361 (D.C. Cir. 2008) ....................................... 7

*United States v. Gardellini*,
   545 F.3d 1089 (D.C. Cir. 2008) ....................................... 6

*\*United States v. Green*,
   436 F.3d 449 (4th Cir. 2006) ........................................... 9

*United States v. Larry*,
   632 F.3d 933 (5th Cir. 2011) ........................................... 7

*\*United States v. Martin*,
   520 F.3d 87 (1st Cir. 2008) ............................................ 10

*\*United States v. Smart*,
   518 F.3d 800 (10th Cir. 2008) ....................................... 10

## STATUTES:

18 U.S.C. § 2 ........................................................................................ 2, 10

18 U.S.C. § 1347 ................................................................................. 2, 10

18 U.S.C. § 1349 ................................................................................. 2, 10

18 U.S.C. § 1956(a)(1)(B)(i) ........................................................... 2, 3, 10

18 U.S.C. § 1956(h) ............................................................................... 2, 3

18 U.S.C. § 3231 ....................................................................................... 1

18 U.S.C. § 3553(a) .............................................................................. 6, 9

21 U.S.C. § 846 ........................................................................ 1, 2, 3, 4, 10

21 U.S.C. § 841(a)(1) ........................................................................ 1, 2, 3

21 U.S.C. § 841(b)(1)(C) ................................................................... 1, 2, 3

21 U.S.C. § 843(a)(3) ............................................................................... 10

28 U.S.C. § 1291 ....................................................................................... 1

28 U.S.C. § 1294(1) .................................................................................. 1

## SENTENCING GUIDELINES:

Application Note 2(B) to U.S.S.G. § 1B1.3 ............................................. 8

U.S.S.G. § 2D1.1 ...................................................................................... 3

U.S.S.G. § 3B1.1 ...................................................................................... 3

\* Authorities upon which we chiefly rely upon are marked with asterisks.

## JURISDICTIONAL STATEMENT

Appellant Derrick Byas pleaded guilty to one count of violating 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) (Conspiracy to Distribute and Dispense Controlled Substances) in the United States District Court for the District of Columbia.   The United States District Court for the District of Columbia had original jurisdiction pursuant to 18 U.S.C. § 3231.

Byas was sentenced on June 4, 2014.  Final judgment was entered on June 11, 2014.  This is an appeal from that final judgment.  Timely Notice of Appeal was filed June 4, 2014. This court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUES

I.   THE DISTRICT COURT ERRED IN SENTENCING BYAS WHEN IT INCLUDED MILLOFF'S PRESCRIPTIONS AS RELEVANT CONDUCT AND SENTENCED BYAS TO A SENTENCE GREATER THAN THE CODEFENDANTS.

## STATUTE AND REGULATIONS

The statutes and regulations are reproduced in the Addendum to this Brief.

## STATEMENT OF THE CASE

On May 10, 2012, a grand jury sitting in the United States District Court for the District of Columbia returned a four count Superseding Indictment charging Monifa Ahmed, Derrick Byas, and

1

Carolyn Denise Nolan with: Count 1) Conspiracy to Distribute and Dispense Controlled Substances, 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C); Count 2) Conspiracy to Engage in Health Care Fraud and Aiding and Abetting, 18 U.S.C. §§ 1347 and 1349 and 2; Count 3) Health Care Fraud and Aiding and Abetting, 18 U.S.C. §§ 1347 and 1349 and 2; and 4) Conspiracy to Launder Proceeds of Illegal Activity, 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h). Byas was named in Counts One and Four. J.A. 44-66. The Superseding Indictment charged Byas with participating in a conspiracy from July 2008 and continuing through on or about November 24, 2010. J.A. 44-45.

The object of the conspiracy was to illegally obtain prescription drugs and money by stealing and forging prescriptions. J.A. 45. Byas was dating codefendant Ahmed. J.A. 172. Ahmed was employed at a pain management clinic operated by Dr. Uy. *Id.* On occasion Byas also worked in the office as the general factotum. *Id.* Their employment gave them access to prescription pads which they stole and forged for prescriptions of OxyContin and Methadone. *Id.* Byas forged prescriptions and sold the pills on the street. *Id.* On one occasion he sold blank prescriptions to Pulsirisaroth. *Id.*

On May 3, 2014 an arrest warrant was issued and Byas was arrested. Byas made his initial appearance and was arraigned on May 3, 2012. Byas entered a plea of not guilty and was held without bond. The following day Byas was released on bond.

On May 10, 2014, a grand jury sitting in the United States District Court for the District of Columbia returned a four count Superseding Indictment. J.A. 44-66. Byas was arraigned on the Superseding Indictment on May 14, 2012 and entered a plea of not guilty. J.A. 8.

Byas filed a number of pretrial motions and the Court held a motions hearing on March 15, 2013. J.A. 10-12. After a series of status conferences, Byas entered a guilty plea to Count One of the Superseding Indictment charging Conspiracy to Distribute and Dispense Controlled Substances, 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) on November 12, 2013. J.A. 67-99. Court Four, money laundering, 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h), was dismissed. J.A. 229. The parties did not enter into a written plea agreement. J.A. 277.

The probation office prepared a draft Presentence Investigation Report (PSR) on March 31, 2014. The United States filed objections on April 15, 2014. J.A. 281-282. Byas filed objections on April 16, 2014. J.A. 239-243. The probation office prepared and filed a final PSR on May 2, 2014. J.A. 244-285.

The final PSR calculated a base level offense of 34[1], and a 2 level increase for the role in the offense pursuant to U.S.S.G § 3B1.1. J.A.

---

[1] The base level offense was determined based upon the amount reasonably foreseeable to Byas pursuant to U.S.S.G. § 2D.1.1. J.A. 259-260.

259-260. The PSR did not recommend 2 levels off for acceptance of responsibility. J.A. 259-260. Hence, the total offense level was 36. J.A. 260. The criminal history category was III, resulting in an advisory guideline range of 235 to 293 months. J.A. 277. Since the maximum penalty for 18 U.S.C. § 846 is 20 years, the guideline range was determined to be 235 to 240 months imprisonment. *Id*.

Byas objected to the PSR's base level offense of 34. J.A. 242. Byas argued his base offense level should be 24 based on 274.164 kilograms which was the scope of his dealings with Anthony Pulsirisaroth.[2] *Id*. Byas argued the additional weight attributable to the other defendants was not reasonably foreseeable to him. *Id*.

On April 7, 2014, the District Court ordered the parties to file memorandum of law on the sentencing issues. J.A. 27. The United States filed a Memorandum of Law in Support of Sentencing Dispute Resolution Issues on May 16, 2014. J.A. 103-108. Byas filed a Memorandum of Law in Support of Sentencing Dispute Resolution Issues on May 20, 2014. J.A. 134-176.

At the sentencing hearing on June 4, 2014, the Court calculated the base level offense as 32.[3] J.A. 199. The Court did not apply a 2 level

---

[2] Based on a total weight of 274.164 kilograms, the base level should be 24 and the guideline range 63 to 78 months. J.A. 242.

[3] At sentencing, the District Court held: "that the quantity of controlled substances involved here include the prescriptions passed by Mr. Byas himself, the Basdeo prescription, the Pulsirisaroth prescriptions and

increase for his role in the offense. J.A. 208.  The Court did give Byas a 2 level decrease for accepting responsibility (J.A. 212) and a 2 level decrease for the pending sentencing amendments.[4] J.A. 199.  Byas was sentenced to fifty-four months imprisonment, followed by thirty-six months of supervised release and a $100 special assessment. J.A. 227-228.  Byas filed a timely notice of appeal on June 4, 2014. J.A. 232. Final Judgment was entered on June, 11, 2014. J.A. 233-238. This is an appeal of that Final Judgment.

## SUMMARY OF ARGUMENT

Derrick Byas submits that the District Court incorrectly calculated his sentencing guidelines when it included the prescriptions Milloff received from Ahmed. There was no evidence that Byas ever dealt with Milloff. The evidence that Byas had a couple limited encounters with Milloff does not make Milloff's participation in the conspiracy reasonably foreseeable to Byas.

In addition, the District Court erred when it imposed a sentence on Byas greater than what the codefendants received. Since Byas'

---

the Miloff prescriptions, which equals 1193.672 kilograms of marijuana which results in a base offense level of 32." J.A. 199.

[4] The parties and Court agreed to apply an additional 2 level reduction in anticipation of the pending amendments to the federal sentencing guidelines. J.A. 199. The decrease was contingent upon Byas not seeking a further decrease after the amendments became effective. *Id.*

culpability was less than the codefendants, he should have received a lesser sentence.

## ARGUMENT

I.   THE DISTRICT COURT ERRED IN SENTENCING BYAS WHEN IT INCLUDED MILLOFF'S PRESCRIPTIONS AS RELEVANT CONDUCT AND SENTENCED BYAS TO A SENTENCE GREATER THAN THE CODEFENDANTS.

### a. Standard of Review

Appellate courts must review sentences under an abuse of discretion standard. *Rita v. United States*, 551 U.S. 338, 351 (2007). Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the federal Sentencing Guidelines have been advisory, and appellate review of district court sentences has been for "reasonableness."

There are two types of appellate sentencing review: procedural and substantive. *United States v. Gardellini*, 545 F.3d 1089, 1092 (D.C. Cir. 2008) citing *Gall v. United States*, 552 U.S. 38 (2007). As to procedure, appellate courts must ensure that the sentencing court did not: (1) improperly calculate or fail to calculate the applicable Guidelines range, (2) treat the Guidelines as mandatory, (3) fail to consider the 18 U.S.C. § 3553(a) factors, (4) select a sentence based on "clearly erroneous facts," and (5) fail to "adequately explain the chosen sentence," including any deviation from the Guidelines range. *Id.*

The appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Id.* When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. *Id.*

An appellate court reviews a district court's factual findings for clear error and it reviews de novo the district court's application and interpretation of the sentencing guidelines. *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008). When a court in applying its discretion fails to consider the factors as required by law, it abuses its discretion. *United States v. Larry*, 632 F.3d 933 (5th Cir. 2011).

### b. The District Court Erred by Including the Milloff Prescriptions as Reasonably Foreseeable Relevant Conduct

Generally, a defendant conspirator is responsible for the actual drugs he or she distributed in a conspiracy, including jointly undertaken activity if the offense was done in furtherance of the conspiracy, and could have been reasonably foreseen as necessary or natural consequence of the unlawful agreement. *Pinkerton v. United States*, 328 U.S. 640, 647-648 (1946). In addition to actual knowledge, the guidelines hold a defendant accountable for all jointly undertaken conduct of a conspiracy, if it is reasonably foreseeable to that particular

defendant.[5] Each defendant in a conspiracy is not automatically responsible for all the drugs distributed in the conspiracy. *United States v. Anderson*, 39 F.3d 331, 352 (D.C. Cir. 1995). The court must determine the scope of criminal activity the particular defendant agreed to jointly undertake. Thus, the sentencing guideline calculation of other relevant conduct for conspiratorial activity requires the court to hold a defendant accountable for his own personal conduct plus the conduct calculated on the basis of reasonable-foreseeability standards.

At sentencing the District Court held "that the quantity of controlled substances involved here include the prescriptions passed by Mr. Byas himself, the Basdeo prescription, the Pulsirisaroth prescriptions and the Milloff prescriptions." J.A. 199. In regards to the Milloff prescriptions, the Court held "Mr. Byas' presence at at least one of the Miloff transactions and the fact that he was the one who informed Mr. Miloff that Ms. Ahmed could not be involved anymore since she was under suspicion, I am less troubled by finding that those prescriptions were reasonably foreseeable." J.A. 184.

---

[5] Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant ("the jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy and hence relevant conduct is not necessarily the same for every participant. Application Note 2(B) to U.S.S.G. § 1B1.3.

Byas does not dispute that he is responsible for the prescriptions he passed himself, however, he disputes responsibility for the prescriptions Ahmed passed to Timothy Milloff. Byas never distributed any prescriptions or narcotics to Milloff, nor did he exchange any money with Milloff. Byas was merely present once when he visited the doctor's office and once when Ahmed met with him. Byas had no knowledge of the scope of Milloff's involvement in the conspiracy. Milloff testified that he had no involvement with Byas. Had the Court not included the Milloff prescription, Byas' guideline would have been lower and he could have received a lower sentence. Hence the court erred when it incorrectly calculated the relevant conduct.

### c. The District Court Erred When it Imposed a Greater Sentence on Byas than the Codefendants

The sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). District courts are, "prohibited from imposing any sentence that represents an 'unwarranted sentencing disparity.'" *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006).

"[C]ourts have discretion, in appropriate cases, to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability-at least in those cases where disparities are conspicuous and threaten to undermine confidence in the criminal

justice system." *United States v. Martin*, 520 F.3d 87, 94 (1st Cir. 2008); *See also United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008).

Byas is no more culpable than his codefendants. Specifically, codefendant Carolyn Nolan was sentenced to 36 months after pleading guilty to three separate offenses.[6] J.A. 4. Codefendant Monifa Ahmed received a 24 month sentence after pleading guilty to two separate offenses.[7] J.A. 2. Byas and the codefendants pleaded guilty to the same offense as part of the same conspiracy and are similarly situated. Ahmed was more culpable than Byas, yet Byas received more than double the amount of time in prison.

Examining the totality of the circumstances, Byas did not warrant a sentence greater than what the codefendants received. While a guideline sentence is presumed reasonable, this disparity was not warranted.

---

[6] Nolan pleaded guilty to: 1 count of conspiracy to distribute controlled substance in violation of 21 U.S.C. 846; 1 count of conspiracy to engage in health care fraud and aiding and abetting in violation of 18 U.S.C. 1349 and 2; and 1 count of health care fraud and aiding and abetting in violation of 18 U.S.C. 1347 and 2. J.A. 4.

[7] Ahmed pleaded guilty to 1 count of conspiracy to obtain controlled substances by prescription fraud in violation of 21 U.S.C. 843(a)(3) and 846 and 1 count of conspiracy to launder proceeds of illegal activity in violation of 18 U.S.C. 1956(a)(1)(B)(i) and (h). J.A. 2.

## CONCLUSION

For the foregoing reasons, Appellant, Derrick Byas, respectfully requests this Honorable Court reverse the District Court's judgment and remand this case for resentencing of Appellant Derrick Byas.


Respectfully submitted,


_____/s/_____
Jospeh R. Conte
400 7th Street, N.W.
Suite 206
Washington, D.C. 20004
(202) 638-4100

*Counsel for Appellant*

_____/s/_____
Charles J. Soschin
400 7th Street, N.W.
Suite 206
Washington, D.C. 20004
(703) 981-3629

*Counsel for Appellant*

STATUTORY ADDENDUM

# <u>TABLE OF CONTENTS</u>

Application Note 2(B) to U.S.S.G. § 1B1.3.................................................1

U.S.S.G. § 2D1.1 ...........................................................................2

U.S.S.G. § 3B1.1 ...........................................................................15

foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)  solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)  all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)  any other information specified in the applicable guideline.

(b)  Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence).  Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

*Commentary*

*Application Notes:*

*1.  The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.  Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.*

*2.  A "jointly undertaken criminal activity" is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy.*

*In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was both:*

*(A)  in furtherance of the jointly undertaken criminal activity; and*

*(B)  reasonably foreseeable in connection with that criminal activity.*

*Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.  In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives*

## PART D - OFFENSES INVOLVING DRUGS AND NARCO-TERRORISM

Historical Note:  Effective November 1, 1987.  Amended effective November 1, 2007 (see Appendix C, amendment 711).

### 1.    UNLAWFUL MANUFACTURING, IMPORTING, EXPORTING, TRAFFICKING, OR POSSESSION; CONTINUING CRIMINAL ENTERPRISE

**§2D1.1.    Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy**

(a)    Base Offense Level (Apply the greatest):

(1)    **43**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or

(2)    **38**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance; or

(3)    **30**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(E) or 21 U.S.C. § 960(b)(5), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or

(4)    **26**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(E) or 21 U.S.C. § 960(b)(5), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance; or

(5)    the offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level **32**, decrease by **2** levels; (ii) level **34** or level **36**, decrease by **3** levels; or (iii) level **38**, decrease by **4** levels.  If the resulting offense level is greater than level **32** and the defendant receives the **4**-level ("minimal participant") reduction in §3B1.2(a), decrease to level **32**.

(b)    Specific Offense Characteristics

(1)    If a dangerous weapon (including a firearm) was possessed, increase by **2** levels.

(2)    If the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by **2** levels.

(3)   If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, (B) a submersible vessel or semi-submersible vessel as described in 18 U.S.C. § 2285 was used, or (C) the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by **2** levels. If the resulting offense level is less than level **26**, increase to level **26**.

(4)   If the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility, increase by **2** levels.

(5)   If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under §3B1.2 (Mitigating Role), increase by **2** levels.

(6)   If the defendant is convicted under 21 U.S.C. § 865, increase by **2** levels.

(7)   If the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service, increase by **2** levels.

(8)   If the offense involved the distribution of an anabolic steroid and a masking agent, increase by **2** levels.

(9)   If the defendant distributed an anabolic steroid to an athlete, increase by **2** levels.

(10)  If the defendant was convicted under 21 U.S.C. § 841(g)(1)(A), increase by **2** levels.

(11)  If the defendant bribed, or attempted to bribe, a law enforcement officer to facilitate the commission of the offense, increase by **2** levels.

(12)  If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by **2** levels.

(13)  (Apply the greatest):

      (A)   If the offense involved (i) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance; or (ii) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, increase by **2** levels.

      (B)   If the defendant was convicted under 21 U.S.C. § 860a of distributing, or possessing with intent to distribute, methamphetamine on premises

where a minor is present or resides, increase by **2** levels.  If the resulting offense level is less than level **14**, increase to level **14**.

(C)  If—

(i)  the defendant was convicted under 21 U.S.C. § 860a of manufacturing, or possessing with intent to manufacture, methamphetamine on premises where a minor is present or resides; or

(ii)  the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to (I) human life other than a life described in subdivision (D); or (II) the environment,

increase by **3** levels.  If the resulting offense level is less than level **27**, increase to level **27**.

(D)  If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by **6** levels.  If the resulting offense level is less than level **30**, increase to level **30**.

(14) If (A) the offense involved the cultivation of marihuana on state or federal land or while trespassing on tribal or private land; and (B) the defendant receives an adjustment under §3B1.1 (Aggravating Role), increase by **2** levels.

(15) If the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors:

(A)  (i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise;

(B)  the defendant, knowing that an individual was (i) less than 18 years of age, (ii) 65 or more years of age, (iii) pregnant, or (iv) unusually vulnerable due to physical or mental condition or otherwise particularly susceptible to the criminal conduct, distributed a controlled substance to that individual or involved that individual in the offense;

(C)  the defendant was directly involved in the importation of a controlled substance;

(D)  the defendant engaged in witness intimidation, tampered with or destroyed evidence, or otherwise obstructed justice in connection with the investigation or prosecution of the offense;

        (E)    the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood,

    increase by **2** levels.

    (16)  If the defendant receives the **4**-level ("minimal participant") reduction in §3B1.2(a) and the offense involved all of the following factors:

        (A)   the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense;

        (B)   the defendant received no monetary compensation from the illegal purchase, sale, transport, or storage of controlled substances; and

        (C)   the defendant had minimal knowledge of the scope and structure of the enterprise,

    decrease by **2** levels.

    (17)  If the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels.

[Subsection (c) (Drug Quantity Table) is set forth on the following pages.]

(d)   Cross References

    (1)   If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder) or §2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

    (2)   If the defendant was convicted under 21 U.S.C. § 841(b)(7) (of distributing a controlled substance with intent to commit a crime of violence), apply §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to the crime of violence that the defendant committed, or attempted or intended to commit, if the resulting offense level is greater than that determined above.

(e)   Special Instruction

    (1)   If (A) subsection (d)(2) does not apply; and (B) the defendant committed, or attempted to commit, a sexual offense against another individual by distributing, with or without that individual's knowledge, a controlled substance to that individual, an adjustment under §3A1.1(b)(1) shall apply.

## (c) DRUG QUANTITY TABLE

**Controlled Substances and Quantity\***                **Base Offense Level**

(1)  ● 90 KG or more of Heroin;                                            **Level 38**
     ● 450 KG or more of Cocaine;
     ● 25.2 KG or more of Cocaine Base;
     ● 90 KG or more of PCP, or 9 KG or more of PCP (actual);
     ● 45 KG or more of Methamphetamine, or
            4.5 KG or more of Methamphetamine (actual), or
            4.5 KG or more of "Ice";
     ● 45 KG or more of Amphetamine, or
            4.5 KG or more of Amphetamine (actual);
     ● 900 G or more of LSD;
     ● 36 KG or more of Fentanyl;
     ● 9 KG or more of a Fentanyl Analogue;
     ● 90,000 KG or more of Marihuana;
     ● 18,000 KG or more of Hashish;
     ● 1,800 KG or more of Hashish Oil;
     ● 90,000,000 units or more of Ketamine;
     ● 90,000,000 units or more of Schedule I or II Depressants;
     ● 5,625,000 units or more of Flunitrazepam.

(2)  ● At least 30 KG but less than 90 KG of Heroin;                        **Level 36**
     ● At least 150 KG but less than 450 KG of Cocaine;
     ● At least 8.4 KG but less than 25.2 KG of Cocaine Base;
     ● At least 30 KG but less than 90 KG of PCP, or
            at least 3 KG but less than 9 KG of PCP (actual);
     ● At least 15 KG but less than 45 KG of Methamphetamine, or
            at least 1.5 KG but less than 4.5 KG of Methamphetamine (actual), or
            at least 1.5 KG but less than 4.5 KG of "Ice";
     ● At least 15 KG but less than 45 KG of Amphetamine, or
            at least 1.5 KG but less than 4.5 KG of Amphetamine (actual);
     ● At least 300 G but less than 900 G of LSD;
     ● At least 12 KG but less than 36 KG of Fentanyl;
     ● At least 3 KG but less than 9 KG of a Fentanyl Analogue;
     ● At least 30,000 KG but less than 90,000 KG of Marihuana;
     ● At least 6,000 KG but less than 18,000 KG of Hashish;
     ● At least 600 KG but less than 1,800 KG of Hashish Oil;
     ● At least 30,000,000 units but less than 90,000,000 units of Ketamine;
     ● At least 30,000,000 units but less than 90,000,000 units of
            Schedule I or II Depressants;
     ● At least 1,875,000 units but less than 5,625,000 units of Flunitrazepam.

(3)  ● At least 10 KG but less than 30 KG of Heroin;                        **Level 34**
     ● At least 50 KG but less than 150 KG of Cocaine;
     ● At least 2.8 KG but less than 8.4 KG of Cocaine Base;
     ● At least 10 KG but less than 30 KG of PCP, or
            at least 1 KG but less than 3 KG of PCP (actual);

- At least 5 KG but less than 15 KG of Methamphetamine, or
  - at least 500 G but less than 1.5 KG of Methamphetamine (actual), or
  - at least 500 G but less than 1.5 KG of "Ice";
- At least 5 KG but less than 15 KG of Amphetamine, or
  - at least 500 G but less than 1.5 KG of Amphetamine (actual);
- At least 100 G but less than 300 G of LSD;
- At least 4 KG but less than 12 KG of Fentanyl;
- At least 1 KG but less than 3 KG of a Fentanyl Analogue;
- At least 10,000 KG but less than 30,000 KG of Marihuana;
- At least 2,000 KG but less than 6,000 KG of Hashish;
- At least 200 KG but less than 600 KG of Hashish Oil;
- At least 10,000,000 but less than 30,000,000 units of Ketamine;
- At least 10,000,000 but less than 30,000,000 units of Schedule I or II Depressants;
- At least 625,000 but less than 1,875,000 units of Flunitrazepam.

(4)  
- At least 3 KG but less than 10 KG of Heroin;                                    **Level 32**
- At least 15 KG but less than 50 KG of Cocaine;
- At least 840 G but less than 2.8 KG of Cocaine Base;
- At least 3 KG but less than 10 KG of PCP, or
  - at least 300 G but less than 1 KG of PCP (actual);
- At least 1.5 KG but less than 5 KG of Methamphetamine, or
  - at least 150 G but less than 500 G of Methamphetamine (actual), or
  - at least 150 G but less than 500 G of "Ice";
- At least 1.5 KG but less than 5 KG of Amphetamine, or
  - at least 150 G but less than 500 G of Amphetamine (actual);
- At least 30 G but less than 100 G of LSD;
- At least 1.2 KG but less than 4 KG of Fentanyl;
- At least 300 G but less than 1 KG of a Fentanyl Analogue;
- At least 3,000 KG but less than 10,000 KG of Marihuana;
- At least 600 KG but less than 2,000 KG of Hashish;
- At least 60 KG but less than 200 KG of Hashish Oil;
- At least 3,000,000 but less than 10,000,000 units of Ketamine;
- At least 3,000,000 but less than 10,000,000 units of Schedule I or II Depressants;
- At least 187,500 but less than 625,000 units of Flunitrazepam.

(5)  
- At least 1 KG but less than 3 KG of Heroin;                                    **Level 30**
- At least 5 KG but less than 15 KG of Cocaine;
- At least 280 G but less than 840 G of Cocaine Base;
- At least 1 KG but less than 3 KG of PCP, or
  - at least 100 G but less than 300 G of PCP (actual);
- At least 500 G but less than 1.5 KG of Methamphetamine, or
  - at least 50 G but less than 150 G of Methamphetamine (actual), or
  - at least 50 G but less than 150 G of "Ice";
- At least 500 G but less than 1.5 KG of Amphetamine, or
  - at least 50 G but less than 150 G of Amphetamine (actual);
- At least 10 G but less than 30 G of LSD;
- At least 400 G but less than 1.2 KG of Fentanyl;
- At least 100 G but less than 300 G of a Fentanyl Analogue;
- At least 1,000 KG but less than 3,000 KG of Marihuana;
- At least 200 KG but less than 600 KG of Hashish;

● At least 20 KG but less than 60 KG of Hashish Oil;
● At least 1,000,000 but less than 3,000,000 units of Ketamine;
● At least 1,000,000 but less than 3,000,000 units of Schedule I or II Depressants;
● 1,000,000 units or more of Schedule III Hydrocodone;
● At least 62,500 but less than 187,500 units of Flunitrazepam.

(6) ● At least 700 G but less than 1 KG of Heroin;                    **Level 28**
● At least 3.5 KG but less than 5 KG of Cocaine;
● At least 196 G but less than 280 G of Cocaine Base;
● At least 700 G but less than 1 KG of PCP, or
    at least 70 G but less than 100 G of PCP (actual);
● At least 350 G but less than 500 G of Methamphetamine, or
    at least 35 G but less than 50 G of Methamphetamine (actual), or
    at least 35 G but less than 50 G of "Ice";
● At least 350 G but less than 500 G of Amphetamine, or
    at least 35 G but less than 50 G of Amphetamine (actual);
● At least 7 G but less than 10 G of LSD;
● At least 280 G but less than 400 G of Fentanyl;
● At least 70 G but less than 100 G of a Fentanyl Analogue;
● At least 700 KG but less than 1,000 KG of Marihuana;
● At least 140 KG but less than 200 KG of Hashish;
● At least 14 KG but less than 20 KG of Hashish Oil;
● At least 700,000 but less than 1,000,000 units of Ketamine;
● At least 700,000 but less than 1,000,000 units of Schedule I or II Depressants;
● At least 700,000 but less than 1,000,000 units of Schedule III Hydrocodone;
● At least 43,750 but less than 62,500 units of Flunitrazepam.

(7) ● At least 400 G but less than 700 G of Heroin;                    **Level 26**
● At least 2 KG but less than 3.5 KG of Cocaine;
● At least 112 G but less than 196 G of Cocaine Base;
● At least 400 G but less than 700 G of PCP, or
    at least 40 G but less than 70 G of PCP (actual);
● At least 200 G but less than 350 G of Methamphetamine, or
    at least 20 G but less than 35 G of Methamphetamine (actual), or
    at least 20 G but less than 35 G of "Ice";
● At least 200 G but less than 350 G of Amphetamine, or
    at least 20 G but less than 35 G of Amphetamine (actual);
● At least 4 G but less than 7 G of LSD;
● At least 160 G but less than 280 G of Fentanyl;
● At least 40 G but less than 70 G of a Fentanyl Analogue;
● At least 400 KG but less than 700 KG of Marihuana;
● At least 80 KG but less than 140 KG of Hashish;
● At least 8 KG but less than 14 KG of Hashish Oil;
● At least 400,000 but less than 700,000 units of Ketamine;
● At least 400,000 but less than 700,000 units of Schedule I or II Depressants;
● At least 400,000 but less than 700,000 units of Schedule III Hydrocodone;
● At least 25,000 but less than 43,750 units of Flunitrazepam.

(8)  ● At least 100 G but less than 400 G of Heroin;                    **Level 24**
     ● At least 500 G but less than 2 KG of Cocaine;
     ● At least 28 G but less than 112 G of Cocaine Base;
     ● At least 100 G but less than 400 G of PCP, or
         at least 10 G but less than 40 G of PCP (actual);
     ● At least 50 G but less than 200 G of Methamphetamine, or
         at least 5 G but less than 20 G of Methamphetamine (actual), or
         at least 5 G but less than 20 G of "Ice";
     ● At least 50 G but less than 200 G of Amphetamine, or
         at least 5 G but less than 20 G of Amphetamine (actual);
     ● At least 1 G but less than 4 G of LSD;
     ● At least 40 G but less than 160 G of Fentanyl;
     ● At least 10 G but less than 40 G of a Fentanyl Analogue;
     ● At least 100 KG but less than 400 KG of Marihuana;
     ● At least 20 KG but less than 80 KG of Hashish;
     ● At least 2 KG but less than 8 KG of Hashish Oil;
     ● At least 100,000 but less than 400,000 units of Ketamine;
     ● At least 100,000 but less than 400,000 units of Schedule I or II Depressants;
     ● At least 100,000 but less than 400,000 units of Schedule III Hydrocodone;
     ● At least 6,250 but less than 25,000 units of Flunitrazepam.

(9)  ● At least 80 G but less than 100 G of Heroin;                    **Level 22**
     ● At least 400 G but less than 500 G of Cocaine;
     ● At least 22.4 G but less than 28 G of Cocaine Base;
     ● At least 80 G but less than 100 G of PCP, or
         at least 8 G but less than 10 G of PCP (actual);
     ● At least 40 G but less than 50 G of Methamphetamine, or
         at least 4 G but less than 5 G of Methamphetamine (actual), or
         at least 4 G but less than 5 G of "Ice";
     ● At least 40 G but less than 50 G of Amphetamine, or
         at least 4 G but less than 5 G of Amphetamine (actual);
     ● At least 800 MG but less than 1 G of LSD;
     ● At least 32 G but less than 40 G of Fentanyl;
     ● At least 8 G but less than 10 G of a Fentanyl Analogue;
     ● At least 80 KG but less than 100 KG of Marihuana;
     ● At least 16 KG but less than 20 KG of Hashish;
     ● At least 1.6 KG but less than 2 KG of Hashish Oil;
     ● At least 80,000 but less than 100,000 units of Ketamine;
     ● At least 80,000 but less than 100,000 units of Schedule I or II Depressants;
     ● At least 80,000 but less than 100,000 units of Schedule III Hydrocodone;
     ● At least 5,000 but less than 6,250 units of Flunitrazepam.

(10) ● At least 60 G but less than 80 G of Heroin;                    **Level 20**
     ● At least 300 G but less than 400 G of Cocaine;
     ● At least 16.8 G but less than 22.4 G of Cocaine Base;
     ● At least 60 G but less than 80 G of PCP, or
         at least 6 G but less than 8 G of PCP (actual);
     ● At least 30 G but less than 40 G of Methamphetamine, or
         at least 3 G but less than 4 G of Methamphetamine (actual), or

        at least 3 G but less than 4 G of "Ice";
- At least 30 G but less than 40 G of Amphetamine, or
    at least 3 G but less than 4 G of Amphetamine (actual);
- At least 600 MG but less than 800 MG of LSD;
- At least 24 G but less than 32 G of Fentanyl;
- At least 6 G but less than 8 G of a Fentanyl Analogue;
- At least 60 KG but less than 80 KG of Marihuana;
- At least 12 KG but less than 16 KG of Hashish;
- At least 1.2 KG but less than 1.6 KG of Hashish Oil;
- At least 60,000 but less than 80,000 units of Ketamine;
- At least 60,000 but less than 80,000 units of Schedule I or II Depressants;
- At least 60,000 but less than 80,000 units of Schedule III Hydrocodone;
- 60,000 units or more of Schedule III substances (except Ketamine
    or Hydrocodone);
- At least 3,750 but less than 5,000 units of Flunitrazepam.

(11)  ● At least 40 G but less than 60 G of Heroin;                   **Level 18**
- At least 200 G but less than 300 G of Cocaine;
- At least 11.2 G but less than 16.8 G of Cocaine Base;
- At least 40 G but less than 60 G of PCP, or
    at least 4 G but less than 6 G of PCP (actual);
- At least 20 G but less than 30 G of Methamphetamine, or
    at least 2 G but less than 3 G of Methamphetamine (actual), or
    at least 2 G but less than 3 G of "Ice";
- At least 20 G but less than 30 G of Amphetamine, or
    at least 2 G but less than 3 G of Amphetamine (actual);
- At least 400 MG but less than 600 MG of LSD;
- At least 16 G but less than 24 G of Fentanyl;
- At least 4 G but less than 6 G of a Fentanyl Analogue;
- At least 40 KG but less than 60 KG of Marihuana;
- At least 8 KG but less than 12 KG of Hashish;
- At least 800 G but less than 1.2 KG of Hashish Oil;
- At least 40,000 but less than 60,000 units of Ketamine;
- At least 40,000 but less than 60,000 units of Schedule I or II Depressants;
- At least 40,000 but less than 60,000 units of Schedule III Hydrocodone;
- At least 40,000 but less than 60,000 units of Schedule III substances (except
    Ketamine or Hydrocodone);
- At least 2,500 but less than 3,750 units of Flunitrazepam.

(12)  ● At least 20 G but less than 40 G of Heroin;                   **Level 16**
- At least 100 G but less than 200 G of Cocaine;
- At least 5.6 G but less than 11.2 G of Cocaine Base;
- At least 20 G but less than 40 G of PCP, or
    at least 2 G but less than 4 G of PCP (actual);
- At least 10 G but less than 20 G of Methamphetamine, or
    at least 1 G but less than 2 G of Methamphetamine (actual), or
    at least 1 G but less than 2 G of "Ice";
- At least 10 G but less than 20 G of Amphetamine, or
    at least 1 G but less than 2 G of Amphetamine (actual);
- At least 200 MG but less than 400 MG of LSD;

- At least 8 G but less than 16 G of Fentanyl;
- At least 2 G but less than 4 G of a Fentanyl Analogue;
- At least 20 KG but less than 40 KG of Marihuana;
- At least 5 KG but less than 8 KG of Hashish;
- At least 500 G but less than 800 G of Hashish Oil;
- At least 20,000 but less than 40,000 units of Ketamine;
- At least 20,000 but less than 40,000 units of Schedule I or II Depressants;
- At least 20,000 but less than 40,000 units of Schedule III Hydrocodone;
- At least 20,000 but less than 40,000 units of Schedule III substances (except Ketamine or Hydrocodone);
- At least 1,250 but less than 2,500 units of Flunitrazepam.

(13) ● At least 10 G but less than 20 G of Heroin;                          **Level 14**
- At least 50 G but less than 100 G of Cocaine;
- At least 2.8 G but less than 5.6 G of Cocaine Base;
- At least 10 G but less than 20 G of PCP, or
    at least 1 G but less than 2 G of PCP (actual);
- At least 5 G but less than 10 G of Methamphetamine, or
    at least 500 MG but less than 1 G of Methamphetamine (actual), or
    at least 500 MG but less than 1 G of "Ice";
- At least 5 G but less than 10 G of Amphetamine, or
    at least 500 MG but less than 1 G of Amphetamine (actual);
- At least 100 MG but less than 200 MG of LSD;
- At least 4 G but less than 8 G of Fentanyl;
- At least 1 G but less than 2 G of a Fentanyl Analogue;
- At least 10 KG but less than 20 KG of Marihuana;
- At least 2 KG but less than 5 KG of Hashish;
- At least 200 G but less than 500 G of Hashish Oil;
- At least 10,000 but less than 20,000 units of Ketamine;
- At least 10,000 but less than 20,000 units of Schedule I or II Depressants;
- At least 10,000 but less than 20,000 units of Schedule III Hydrocodone;
- At least 10,000 but less than 20,000 units of Schedule III substances (except Ketamine or Hydrocodone);
- At least 625 but less than 1,250 units of Flunitrazepam.

(14) ● Less than 10 G of Heroin;                          **Level 12**
- Less than 50 G of Cocaine;
- Less than 2.8 G of Cocaine Base;
- Less than 10 G of PCP, or
    less than 1 G of PCP (actual);
- Less than 5 G of Methamphetamine, or
    less than 500 MG of Methamphetamine (actual), or
    less than 500 MG of "Ice";
- Less than 5 G of Amphetamine, or
    less than 500 MG of Amphetamine (actual);
- Less than 100 MG of LSD;
- Less than 4 G of Fentanyl;
- Less than 1 G of a Fentanyl Analogue;
- At least 5 KG but less than 10 KG of Marihuana;
- At least 1 KG but less than 2 KG of Hashish;

- At least 100 G but less than 200 G of Hashish Oil;
- At least 5,000 but less than 10,000 units of Ketamine;
- At least 5,000 but less than 10,000 units of Schedule I or II Depressants;
- At least 5,000 but less than 10,000 units of Schedule III Hydrocodone;
- At least 5,000 but less than 10,000 units of Schedule III substances (except Ketamine or Hydrocodone);
- At least 312 but less than 625 units of Flunitrazepam;
- 80,000 units or more of Schedule IV substances (except Flunitrazepam).

(15) ● At least 2.5 KG but less than 5 KG of Marihuana;                    **Level 10**
- At least 500 G but less than 1 KG of Hashish;
- At least 50 G but less than 100 G of Hashish Oil;
- At least 2,500 but less than 5,000 units of Ketamine;
- At least 2,500 but less than 5,000 units of Schedule I or II Depressants;
- At least 2,500 but less than 5,000 units of Schedule III Hydrocodone;
- At least 2,500 but less than 5,000 units of Schedule III substances (except Ketamine or Hydrocodone);
- At least 156 but less than 312 units of Flunitrazepam;
- At least 40,000 but less than 80,000 units of Schedule IV substances (except Flunitrazepam).

(16) ● At least 1 KG but less than 2.5 KG of Marihuana;                    **Level 8**
- At least 200 G but less than 500 G of Hashish;
- At least 20 G but less than 50 G of Hashish Oil;
- At least 1,000 but less than 2,500 units of Ketamine;
- At least 1,000 but less than 2,500 units of Schedule I or II Depressants;
- At least 1,000 but less than 2,500 units of Schedule III Hydrocodone;
- At least 1,000 but less than 2,500 units of Schedule III substances (except Ketamine or Hydrocodone);
- Less than 156 units of Flunitrazepam;
- At least 16,000 but less than 40,000 units of Schedule IV substances (except Flunitrazepam);
- 160,000 units or more of Schedule V substances.

(17) ● Less than 1 KG of Marihuana;                    **Level 6**
- Less than 200 G of Hashish;
- Less than 20 G of Hashish Oil;
- Less than 1,000 units of Ketamine;
- Less than 1,000 units of Schedule I or II Depressants;
- Less than 1,000 units of Schedule III Hydrocodone;
- Less than 1,000 units of Schedule III substances (except Ketamine or Hydrocodone);
- Less than 16,000 units of Schedule IV substances (except Flunitrazepam);
- Less than 160,000 units of Schedule V substances.

**\*Notes to Drug Quantity Table:**

(A)  Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.

(B)  The terms "PCP (actual)", "Amphetamine (actual)", and "Methamphetamine (actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater.

The term "Oxycodone (actual)" refers to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture.

(C)  "Ice," for the purposes of this guideline, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity.

(D)  "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

(E)  In the case of an offense involving marihuana plants, treat each plant, regardless of sex, as equivalent to 100 grams of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

(F)  In the case of Schedule I or II Depressants (except gamma-hydroxybutyric acid), Schedule III substances, Schedule IV substances, and Schedule V substances, one "unit" means one pill, capsule, or tablet. If the substance (except gamma-hydroxybutyric acid) is in liquid form, one "unit" means 0.5 milliliters. For an anabolic steroid that is not in a pill, capsule, tablet, or liquid form (e.g., patch, topical cream, aerosol), the court shall determine the base offense level using a reasonable estimate of the quantity of anabolic steroid involved in the offense. In making a reasonable estimate, the court shall consider that each 25 milligrams of an anabolic steroid is one "unit".

(G)  In the case of LSD on a carrier medium (e.g., a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 milligrams of LSD for the purposes of the Drug Quantity Table.

(H)  Hashish, for the purposes of this guideline, means a resinous substance of cannabis that includes (i) one or more of the tetrahydrocannabinols (as listed in 21 C.F.R. § 1308.11(d)(31)), (ii) at least two of the following: cannabinol, cannabidiol, or cannabichromene, and (iii) fragments of plant material (such as cystolith fibers).

(I)  Hashish oil, for the purposes of this guideline, means a preparation of the soluble cannabinoids derived from cannabis that includes (i) one or more of the tetrahydrocannabinols (as listed in

21 C.F.R. § 1308.11(d)(31)), (ii) at least two of the following: cannabinol, cannabidiol, or cannabichromene, and (iii) is essentially free of plant material (e.g., plant fragments). Typically, hashish oil is a viscous, dark colored oil, but it can vary from a dry resin to a colorless liquid.

### *Commentary*

*Statutory Provisions: 21 U.S.C. §§ 841(a), (b)(1)-(3), (7), (g), 860a, 865, 960(a), (b); 49 U.S.C. § 46317(b). For additional statutory provision(s), see Appendix A (Statutory Index).*

*Application Notes:*

1. *"Mixture or Substance".—"Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/ fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.*

   *An upward departure nonetheless may be warranted when the mixture or substance counted in the Drug Quantity Table is combined with other, non-countable material in an unusually sophisticated manner in order to avoid detection.*

   *Similarly, in the case of marihuana having a moisture content that renders the marihuana unsuitable for consumption without drying (this might occur, for example, with a bale of rain-soaked marihuana or freshly harvested marihuana that had not been dried), an approximation of the weight of the marihuana without such excess moisture content is to be used.*

2. *"Plant".—For purposes of the guidelines, a "plant" is an organism having leaves and a readily observable root formation (e.g., a marihuana cutting having roots, a rootball, or root hairs is a marihuana plant).*

3. *Classification of Controlled Substances.—Certain pharmaceutical preparations are classified as Schedule III, IV, or V controlled substances by the Drug Enforcement Administration under 21 C.F.R. § 1308.13-15 even though they contain a small amount of a Schedule I or II controlled substance. For example, Tylenol 3 is classified as a Schedule III controlled substance even though it contains a small amount of codeine, a Schedule II opiate. For the purposes of the guidelines, the classification of the controlled substance under 21 C.F.R. § 1308.13-15 is the appropriate classification.*

4. *Applicability to "Counterfeit" Substances.—The statute and guideline also apply to "counterfeit" substances, which are defined in 21 U.S.C. § 802 to mean controlled substances that are falsely labeled so as to appear to have been legitimately manufactured or distributed.*

5. *Determining Drug Types and Drug Quantities.—Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See §1B1.3(a)(2) (Relevant Conduct). Where there is no drug seizure or the amount seized does*

## PART B - ROLE IN THE OFFENSE

### *Introductory Commentary*

*This Part provides adjustments to the offense level based upon the role the defendant played in committing the offense. The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of §1B1.3 (Relevant Conduct), i.e., all conduct included under §1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction.*

*When an offense is committed by more than one participant, §3B1.1 or §3B1.2 (or neither) may apply. Section 3B1.3 may apply to offenses committed by any number of participants.*

Historical Note: Effective November 1, 1987. Amended effective November 1, 1990 (see Appendix C, amendment 345); November 1, 1992 (see Appendix C, amendment 456).

**§3B1.1.    Aggravating Role**

Based on the defendant's role in the offense, increase the offense level as follows:

(a)    If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

(b)    If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

(c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

### *Commentary*

*Application Notes:*

*1.    A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.*

*2.    To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.*

*3.    In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,977 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Size 14 Century font.

/s/
_____

Joseph R. Conte
*Counsel for Appellant*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that on this 5th day of October, 2015, I caused this Brief of Appellant to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Elizabeth Trosman
> Lori Buckler
> Office of the U.S. Attorney
> 555 4th Street, NW
> Washington, D.C. 20530
> (202) 252-6829
> *Counsel for Appellee*

I further certify that on October 6, 2015 I caused the required number of copies of the Brief of Appellant to be hand filed with the Clerk of Court.


_____/s/_____
Joseph R. Conte
*Counsel for Appellant*